# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**Steven Max Pottorff,**<br><br>**Debtor.** | **Bankruptcy Case**<br>**No. 17-41005-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

Thomas D. Smith, SPINNER, WOOD & SMITH, Pocatello, Idaho, Attorney for chapter 7 trustee.

Amber Kauffman, Boise, Idaho, Attorney for Idaho State Tax Commission.

Jed W. Manwaring, EVANS KEANE LLP, Boise, Idaho, Attorney for creditors Linan Inc. d/b/a Dura-Bilt Transmissions; Dura-Bilt Transmission Exchange, Inc.; and A & D Investments LLC.

### *Introduction*

Before the Court is creditors Linan Inc. d/b/a Dura-Bilt Transmissions, Dura-Bilt

Transmission Exchange, Inc., and A & D Investments LLC ("Creditors") objection to the

Stipulation to Vacate the Withdrawal, Dkt. No. 219, as well as Creditors' objection to

second amended Claim No. 8, Dkt. No. 232.  The Court conducted an evidentiary hearing

on February 25, 2020, after which the parties requested the opportunity to file

MEMORANDUM OF DECISION − 1

supplemental briefs.  Following the completion of the briefing, *see* Dkt. Nos. 243–245, the objections were deemed under advisement.  The Court has now considered the briefs, exhibits, and argument presented, as well as the applicable law, and issues the following decision which resolves the two objections.  Fed. R. Bankr. P. 7052; 9014.

### *Facts*

On November 15, 2017, the Debtor filed his Chapter 7[1] Petition.  Dkt. No. 1.  That same day, Debtor's ex-wife, Charlotte Pottorff, also filed a bankruptcy petition.  *In re Pottorff,* 17-41006-JMM.  Based on the petition date, the deadline for a governmental unit to file a proof of claim was set for May 14, 2018.  Dkt. No. 3.  On April 18, 2018, the Idaho State Tax Commission ("ISTC") filed Claim No. 5 in Debtor's case, claiming the amount of $91,872.00 as a "priority" claim for tax years 2011–2016.  Claims Reg. 5-1.  The underlying basis for Claim No. 5 was tax liability imposed on unreported income stemming from $2.3 million in funds embezzled by Debtor's ex-wife from Creditors, her former employer.

On June 11, 2018, ISTC filed a new claim based on its determination of deficiency in the amount of $104,570 for tax years 2007–2010 ("Claim No. 7").  Claims Reg. at 7-1.  The basis for that claim was the unreported income derived from Debtor's ex-wife's embezzlement, the same as for Claim No. 5.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 2

On February 15, 2019, R. Sam Hopkins, the chapter 7 trustee ("Trustee"), filed objections to both Claim Nos. 5 and 7.  Dkt. Nos. 132; 134.  ISTC did not respond to the objection to Claim No. 5, and on March 22, 2019, the Court entered an order disallowing that claim, Dkt. No. 142.  ISTC did not appeal or move for reconsideration of that order.  However, ISTC did respond to Debtor's objection to Claim No. 7, Dkt. No. 140, but that response was overlooked by both the Trustee and the Court, and the Trustee sought an order disallowing the claim, Dkt. No. 153, and the next day, May 24, 2019, the Court ordered that Claim No. 7 be disallowed, Dkt. No. 154.[2]

On July 9, 2019, ISTC filed a Motion to Reconsider the disallowance of Claim No. 5 ("Reconsideration Motion").  Dkt. No. 158.  In that motion, ISTC also sought a ruling that Claim No. 5 could be amended to add interest, penalties, and a claim for taxes owed for additional tax years.  *Id.*  However, in the alternative, it sought reconsideration and vacation of the order disallowing Claim No. 7.  Debtor objected to the motion, and it was set for hearing, but was continued for several months so an evidentiary hearing could be conducted.  Dkt. Nos. 160, 161, 164.  In the interim, before the hearing, on July 23, 2019, ISTC filed a new claim, Claim No. 8, in which it claimed a priority amount of $174,278.30 for tax years 2007–2016, and general claims representing the penalties on the priority amounts due for tax years 2007–2016 in the amount of $88,472.  Claims Reg. 8-1.  That new claim was based upon the same facts as Claim Nos. 5 and 7—the

---

[2] That order was generated by the Clerk of Court.

MEMORANDUM OF DECISION – 3

unreported income from Debtor's ex-wife's embezzlement.  On August 29, 2019, Debtor objected to Claim No. 8, Dkt. No. 168, but later withdrew its objection on October 17, 2019, Dkt. No. 213.

That same day, October 17, 2019, ISTC filed a Withdrawal of Reconsideration Motion "with prejudice" ("Withdrawal").  Dkt. No. 212.  The backstory behind the Withdrawal is that ISTC and Debtor had entered into a Settlement Agreement and Mutual Release ("Settlement Agreement").[3]  Ex. A.  That Settlement Agreement, admitted under seal, required Debtor to pay a specified sum to ISTC towards the tax liability, and provided that such payment would be "final and conclusive as to any income tax liability owed by Pottorff."  *Id*.  It also contained a mutual release of tax claims arising out of the embezzled funds.

A few days later, ISTC filed an amended Claim No. 8, but Creditors objected to the claim.  Dkt. No. 215.  ISTC filed a response to the objection on December 4, 2019. Dkt. No. 218.  However, following the objection and response, ISTC filed a second amended Claim No. 8, in which ISTC reduced its priority claim to $109,357 for tax years 2008–2013, and asserted general claims totaling $86,948 for penalties incurred for tax years 2008–2016.  Claims Reg. 8-3.  Thereafter, Creditors filed an amended objection to Claim No. 8.  Dkt. No. 232.

---

[3] Creditors were not parties to the Settlement Agreement and were unaware of its existence for a time. They were provided a copy by ISTC on February 19, 2020, in response to a subpoena.

MEMORANDUM OF DECISION − 4

On December 4, 2019, ISTC filed a notice that the Withdrawal contained an error, in that it was intended to be with prejudice "as to the Debtor" only.  Dkt. No. 216.  That same day, ISTC and Debtor filed a stipulation to set aside and vacate the Withdrawal ("Stipulation to Vacate").  Dkt. No. 217.  Creditors objected on December 10, 2019.  Dkt. No. 219.

Accordingly, at the hearing date set on February 25, 2020, the following remained pending:[4]  1) Creditors' objection to the Stipulation to Vacate the Withdrawal (Dkt. No. 219); and 2) Creditors' objection to second amended Claim No. 8 (Dkt. No. 232).[5]  Dkt. No. 228.

### *Analysis and Disposition*

Due to the convoluted record in this case, the Court will begin by examining the status of each of the proofs of claim filed by ISTC in this case.

A.  Claim No. 5

As noted above, following ISTC's filing of Claim No. 5, the Trustee filed an objection, to which ISTC never responded.  As a result, the objection was granted and Claim No. 5 was disallowed.  Three and a half months later, ISTC filed the Reconsideration Motion seeking to have the Court reconsider the disallowance of that

---

[4] At the time the notice of hearing was filed, the second amended Claim No. 8 had not yet been filed. However, at the hearing, the parties argued, and the Court considered, the second amended Claim No. 8.

[5] There was also a motion, filed by Creditors, to file the Settlement Agreement under seal.  Dkt. No. 233. That motion was granted by the Court during the hearing.  Dkt. No. 242.

MEMORANDUM OF DECISION – 5

claim.  On October 17, 2019, ISTC filed its Withdrawal of the Reconsideration Motion,

doing so "with prejudice" after Debtor and ISTC entered into a Settlement Agreement to

resolve their differences.  Later, after things unraveled, ISTC and Debtor stipulated to

vacate the Withdrawal of the Reconsideration Motion, and Creditors filed the objection at

issue.

In support of their objection, Creditors contend that the order disallowing Claim

No. 5 is a final judgment and is entitled to claim preclusion, thus preventing further

consideration of that order.  However, their post-hearing brief centers more on the

elements of issue preclusion.  Due to the confusion, the Court will consider both

doctrines.

### 1. Issue Preclusion

The doctrine of issue preclusion is directed at parties taking inconsistent positions

on the same issue in different actions.  Issue preclusion bars "successive litigation of an

issue of fact or law actually litigated and resolved in a valid court determination essential

to the prior judgment," even if the issue recurs in the context of a different claim.  *Taylor*

*v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171 (2008).  It "bars the relitigation of

issues actually adjudicated in previous litigation between the same parties."  *Beauchamp*

*v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (quoting *Clark v.*

*Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir. 1992)).  It is intended to protect

parties from multiple lawsuits and the possibility of inconsistent decisions, and to

conserve judicial resources.  *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 553, 110 S. Ct.

MEMORANDUM OF DECISION − 6

1331, 1337 (1990); *Montana v. United States,* 440 U.S. 147, 153–54, 99 S. Ct. 970, 973–74 (1979).  Thus, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Berr v. Federal Deposit Ins. Corp. (In re Berr)*, 172 B.R. 299, 306 (9th Cir. BAP 1994) (citing *Montana,* 440 U.S. at 153, 99 S. Ct. at 973.)

In this case, Creditors contend ISTC is precluded from seeking a priority tax claim in Debtor's case based on the unreported embezzlement income because the issue of its priority tax claim for the same income was decided and paid in full in Ms. Pottorff's bankruptcy case.

### a.  Elements of Issue Preclusion

When a party seeks to invoke the doctrine of issue preclusion and a federal court has decided the earlier case, federal law controls the analysis.  *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004) (citing *Trevino v. Gates,* 99 F.3d 911, 923 (9th Cir. 1996)); *Fireman's Fund Ins. Co. v. Int'l Mkt. Place*, 773 F.2d 1068, 1069 (9th Cir. 1985) (citing *Blonder-Tongue Laboratories v. University of Illinois Found.,* 402 U.S. 313, 324 n. 12, 91 S. Ct. 1434, 1440 n. 12 (1971).  Before issue preclusion may be employed, the Court must consider three factors:  "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a

MEMORANDUM OF DECISION – 7

critical and necessary part of the judgment in the earlier action." *Trevino v. Gates,* 99

F.3d at 923 (quoting *Town of N. Bonneville v. Callaway,* 10 F.3d 1505, 1508 (9th Cir.

1993)).

<u>b.  Application of Issue Preclusion to Facts Presented</u>

Creditors contend that ISTC took the position in Ms. Pottorff's case that its entire

priority claim for the unreported income from her embezzlement was the sum of

$47,112.08.  *In re Charlotte Pottorff,* Case No. 17-41006-JMM, Claims Reg. No. 5-5.

The trustee in Ms. Pottorff's case distributed that sum to ISTC from the assets of the case.

Ex. B.  As such, Creditors argue that ISTC cannot now take a different position in

Debtor's case and pursue a priority claim in a different amount—or any amount—

because it received a 100% payout of its allowed claim in Ms. Pottorff's case based on

the same underlying unreported income.

In response, ISTC argues that due to the complexities of the Code, the priority

amount of its claim applicable to Ms. Pottorff and to Debtor are different, and thus issue

preclusion cannot apply.  The Court will consider the elements of issue preclusion under

these facts.

*i.  Identical Issues*

In order for issue preclusion to prevent ISTC from asserting a priority claim in

Debtor's case based upon the claim it filed in Ms. Pottorff's case, the Court must

conclude that the issues are identical.  At first blush, it would appear to be an easy

question, after all, the basis for the tax liability is the same in both bankruptcy cases, and

MEMORANDUM OF DECISION – 8

full payment in one ought to satisfy the other.  However, the issue is more complex than that and requires an examination of portions of the Bankruptcy Code.

### a.  Statutory Scheme

ISTC contends that the Code provides for differing priority sums between the two bankruptcy cases.  It is correct.  Section 507(a)(8) generally provides that unpaid taxes are given priority status under the Code.  More specifically, however, § 507(a)(8)(A)(i) provides for priority status for taxes due within three years prior to the filing of the petition.  Additionally, § 507(a)(8)(A)(iii) provides for priority status for taxes assessed post-petition unless they fall within §§ 523(a)(1)(B) or (C).  Section 523(a)(1)(B) is not applicable here, therefore the parties' focus is on § 523(a)(1)(C), which concerns fraudulent returns or willful tax evasion.

### b.  Application of Statutory Scheme to Facts Presented

Both Ms. Pottorff's and Debtor's bankruptcy petitions were filed on November 15, 2017.  As such, the three-year look back period of § 507(a)(8)(A)(i) encompassed tax years 2014–2016.  Any unpaid taxes for those tax years would have priority status in both bankruptcy cases pursuant to § 507(a)(8)(A)(i), as tax liability on a joint tax return is joint and several.  Idaho Code § 63-3031(b)(3).

The proof of claim filed by ISTC in Ms. Pottorff's case, as amended for the final time and which was ultimately paid, indicates a *priority* claim for unpaid taxes for tax years 2014, 2015, and 2016, and a *general* (meaning non-priority) claim for unpaid taxes for tax years 2007–2013.  Case No. 17-41006-JMM, Claims Reg. 5-5.  The priority claim

MEMORANDUM OF DECISION – 9

in her case was for $47,112.08, and the full amount of that claim was paid from her bankruptcy estate.  The general tax claim, including penalties, totaled $215,638.22 in Ms. Pottorff's case, and of that amount, $4,333.13 of the tax debt was paid, and none of the penalties.  Ex. B.

Turning to Debtor's case, Claim No. 5 seeks a *priority* claim for unpaid taxes for tax years 2011–2016, totaling $91,872.  Claims Reg. 5-1.  However, the tax liability entitled to priority under § 507(a)(8)(A)(i) for taxes assessed within the last three years is duplicative of that claimed by, and distributed to, ISTC in Ms. Pottorff's case. Accordingly, as to tax years 2014–2016, the issue of the priority amounts claimed in Debtor's case in Claim No. 5 are identical to those claimed as priority debt in Ms. Pottorff's case, and thus this element of issue preclusion is met as to those claims.

Concerning the additional priority claim in Debtor's case for taxes owed for 2011–2013, totaling $47,236, ISTC apparently takes Debtor at his word that he did not intentionally file a fraudulent return or willfully evade taxes, making §523(a)(1)(C) inapplicable, and thus ISTC argues that the unpaid taxes assessed post-petition for tax years 2011–2013 should receive priority status in Debtor's bankruptcy under § 507(a)(8)(A)(iii).[6]  This, ISTC contends, is a separate issue from the priority for tax years 2014–2016 under § 507(a)(8)(A)(i).

---

[6] Creditors point out, with a certain incredulity, that under this scheme, Ms. Pottorff, as the wrongdoer, bears responsibility for a lesser amount of priority tax debt than her husband, who maintains he is an innocent spouse.

MEMORANDUM OF DECISION – 10

Creditors contend that the Court ought to take a broader view of the issue for the purposes of preclusion. Rather than examining specific Code treatment of the tax debt at issue, Creditors argue that the Court should consider the underlying basis for ISTC's claim—Ms. Pottorff's embezzlement—as the "issue" to be considered for issue preclusion purposes. Having been paid in full on its priority claim for unpaid taxes stemming from the embezzlement in Ms. Pottorff's case, Creditors reason that ISTC should now be foreclosed from having a second bite at the apple and should not receive any distributions on account of priority tax claims in Debtor's case. The Court concludes that Creditors paint with too broad a brush.

As described above, the Code grants tax debt specific priorities based on particular circumstances. The fact that taxes may not be entitled to priority under § 507(a)(8)(A)(iii) does not exclude their receipt of priority status under another section of § 507(a)(8). 4 *Collier on Bankruptcy* ¶ 507.11[2][c][i] (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing *Daniel v. United States (In re Daniel),* 170 B.R. 466 (Bankr. S.D. Ga. 1994)). Each subsection of § 507(a)(8) is an independent ground for granting priority. 4 *Collier on Bankruptcy* ¶ 507.11[2][c][ii] (Richard Levin & Henry J. Sommer eds., 16th ed.); *see also Clothier v. Internal Rev. Serv. (In re Clothier)*, 588 B.R. 28, 31 (Bankr. W.D. Tenn. 2018). If such is true within the same case, that principle must certainly be applicable as between different debtors in different cases, especially when the debt is joint and several.

MEMORANDUM OF DECISION − 11

Because classifications of debt under the Code can manifest differently in separate bankruptcy cases depending on the facts and circumstances, the Court cannot find that the issue of priority debt is the same in both cases, despite its identical genesis.  The same tax debt for years prior to 2014 was given general status in Ms. Pottorff's case because for her, the debt falls within § 523(a)(1)(C) and cannot receive priority status.  In Debtor's case, the facts are different in that he maintains his innocence when it comes to filing fraudulent returns or willfully evading tax liability, implicating § 523(a)(1)(C).  Thus, his innocence comes at a price—an expansion of debt receiving priority status.[7]

Accordingly, the issue of the priority tax debt under § 507(a)(8)(A)(i) for taxes assessed for years 2014–2016 is the same in both cases, preventing issue preclusion from attaching.  However, the issue of the priority status pursuant to § 507(a)(8)(A)(iii) for tax years 2011–2013 is not the same between Ms. Pottorff's and Debtor's bankruptcy cases, and thus this element of issue preclusion has not been proven for this particular debt.

### ii.  Actually Litigated

The second element of issue preclusion is that the issue must have been actually litigated by the party against whom preclusion is asserted.  *Trevino v. Gates*, 99 F.3d at 923–24.  In the case at bar, ISTC filed a proof of claim in Ms. Pottorff's case, positing that it was owed a priority claim for taxes based on unreported income in the amount of

---

[7] The Court is mindful of the Debtor's predicament here:  he can possibly avoid the priority status of these particular taxes by arguing that he filed a fraudulent return or engaged in willful tax evasion, but in so doing, would possibly expose himself to other repercussions.  Without doubt, he is between a rock and a hard place.

MEMORANDUM OF DECISION − 12

$ 47,112.08.  Because the claim was not objected to, it was ultimately deemed allowed by operation of the statute.  § 502(a).  In considering whether preclusion ought to apply to a claim that was deemed allowed by § 502, the Ninth Circuit observed:

> It would be most peculiar if the effect was that uncontested and allowed claims had less dignity for [preclusion] purposes than a claim which at least one party in interest thought was invalid or contestable in whole or in part. We see no reason to embrace that rather peculiar result.  Rather, we see § 502(a) as a recognition of the fact that people can raise objections and litigate them, if they see something wrong with a claim, but if they do not, the claim will be treated in all respects as a claim allowed by the court itself.  In short, the validity of the claim has been determined on the merits, and attacks upon it that "could have been asserted" cannot be raised in later proceedings.

*Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 530 (9th Cir. 1998) (quoting *Robertson v. Isomedix, Inc. (In re Intl. Nutronics)*, 28 F.3d 965, 969 (9th Cir. 1994)). Therefore, in this issue preclusion analysis, ISTC's priority claim for tax years 2014–2016 was "actually litigated" in Ms. Pottorff's case.  As no priority claim was sought for tax years 2011–2013, that issue was not "actually litigated."

### iii.  Essential to Judgment

The issue of ISTC's priority claim was essential to the administration of Ms. Pottorff's bankruptcy case and to the actual payment of that tax liability through the distribution of estate assets.  It was a priority claim in an asset case, and thus was entitled to distribution.  As such, the determination and allowance of that claim was integral to the completion of her case and for paying the debt owed to ISTC, and was essential to the conclusion of the case.

MEMORANDUM OF DECISION − 13

Because each of the elements of issue preclusion were proven as to the priority tax debt under § 507(a)(8)(A)(i) for taxes assessed for tax years 2014–2016, the Court concludes ISTC is precluded from pursuing those priority claims in Debtor's case. However, as to the remaining tax years at issue, ISTC is not precluded from seeking a priority tax claim in Debtor's case.

Next, Creditors attack Claim No. 5 directly, contending that procedurally, the Court is precluded from re-examining that claim at this point. This invokes the doctrine of claim preclusion.

### 2. Claim Preclusion

Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. at 892, 128 S. Ct. at 2171 (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748, 121 S. Ct. 1808 (2001)); *In re Jensen–Edwards*, 535 B.R. 336, 344–45 (Bankr. D. Idaho 2015) (quoting *Taylor v. Sturgell*, 553 U.S. at 893). This doctrine prevents litigation of all grounds for, or defenses to, recovery that was previously available to the parties, regardless of whether the grounds were asserted or determined at the prior proceeding. *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S. Ct. 317, 320, *reh'g denied,* 309 U.S. 695, 60 S. Ct. 581 (1940). Put another way, claim preclusion "prohibits lawsuits on 'any claims that were raised or could have been raised' in a prior action." *In re Nicholas*, 556 B.R. 465, 473–74 (Bankr. D. Idaho 2016) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th

MEMORANDUM OF DECISION − 14

Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).

b.  Elements

The preclusive effect of a federal-court judgment is determined by federal common law. *Taylor v. Sturgell,* 553 U.S. at 891, 128 S. Ct. at 2171, 171 (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507–508, 121 S. Ct. 1021 (2001)). Generally, the doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens,* 244 F.3d at 713; *Bankruptcy Recovery Network v. Garcia (In re Garcia)*, 313 B.R. 307, 311-12 (9th Cir. BAP 2004).  The proponent of preclusion has the burden of proof and bears the risk of non-persuasion. *Alonso v. Summerville (In re Summerville)*, 361 B.R. 133, 141–42 (9th Cir. BAP 2007) (citing *George v. Morro Bay (In re George)*, 318 B.R. 729, 737 (9th Cir. BAP 2004)).

c.  Application

Creditors contend that because the Court disallowed Claim No. 5 and never resolved the Reconsideration Motion due to ISTC filing the Withdrawal with prejudice, that claim has been decided and cannot be relitigated at this juncture.  In applying claim preclusion under these circumstances, the Court finds two of the required elements have been met.  The claims are identical, as ISTC wishes the Court to now consider the same claim for tax debt as was presented in the Reconsideration Motion—Claim No. 5.

MEMORANDUM OF DECISION − 15

Furthermore, the parties are clearly the same.  As such, those elements have been met. The final element requires further discussion.

The Court concludes there was a final decision on the merits as to Claim No. 5. The Ninth Circuit has held that "[p]roofs of claims themselves are not final judgments giving rise to [claim preclusion], but the bankruptcy court's allowance or disallowance of a proof of claim is a final judgment." *Poonja v. Alleghany Props. (In re Los Gatos Lodge Inc.)*, 278 F.3d 890, 894 (9th Cir. 2002) (citing *Siegel v. Fed. Home Loan Mortgage Corp.,* 143 F.3d at 529–30; *Lane v. Bank of New York Mellon (In re Lane)*, 959 F.3d 1226, 1230 (9th Cir. 2020).  Accordingly, the Court's order disallowing Claim No. 5 is a final judgment on that claim for the purposes of claim preclusion.

The Court finds that each of the elements of claim preclusion have been met, and, absent a motion for reconsideration, the prior disallowance of Claim No. 5 is entitled to preclusive effect.  Such does not end the inquiry, however.  Following the Court's order disallowing Claim No. 5, in a convoluted manner, ISTC sought reconsideration of that order.  Creditors object on the basis of the procedural history of Claim No. 5, and argue the Court is now precluded from reexamining the matter.  This necessitates a second discussion of issue preclusion.

### 3. *Reconsideration*

#### a.  Issue Preclusion, Part II

The Code provides a process for reconsideration of an order disallowing a claim under § 502(j) and Rule 3008.  ISTC followed that path with regard to Claim No. 5, but

MEMORANDUM OF DECISION − 16

before the Court could rule on the Reconsideration Motion, ISTC settled the matter to its satisfaction and filed the Withdrawal of the Reconsideration Motion with prejudice.

The issue Creditors seek issue preclusion on this time is a narrow one: whether ISTC is precluded from asking the Court to revisit its order disallowing Claim No. 5 based upon the Stipulation to Vacate the Withdrawal of the Reconsideration Motion. Restated in simpler terms, does the withdrawal of the motion to reconsider with prejudice bar any further inquiry into this issue?

Invoking the elements of issue preclusion discussed above, the Court concludes that the issues are in fact identical. The Trustee objected to Claim No. 5, and no objections were filed, therefore, the Court entered an order disallowing that claim. At that point, it appeared ISTC had no interest in pursuing Claim No. 5. Subsequently, ISTC moved the Court to reconsider that same order, but then stipulated to withdraw the motion, and did so with prejudice. Once again, it appeared ISTC had settled its business with Debtor, and had no intention of pursuing the claim. Finally, with a proper understanding of the Code's treatment of tax claims, and inspired by Creditors' involvement, ISTC sought to withdraw its prior stipulated, and prejudicial, filing. At the heart of all those machinations is Claim No. 5. Thus the issue at the root of this confusing series of filings is the same—the allowability of Claim No. 5. Accordingly, the Court finds this issue has been met.

The next element of issue preclusion is that the issue must have been actually litigated. Pursuant to § 502(a), a claim is deemed allowed unless a party in interest

MEMORANDUM OF DECISION − 17

objects.  As such, Claim No. 5 was deemed allowed until the Trustee objected.  Upon the

Trustee's objection, Local Bankruptcy Rule 3007.1(b) provides that "[a] response to an

objection to a claim must be filed and served not later than thirty (30) days after service

of the objection.  *If a response is not timely filed, the court may sustain the objection*

*without a hearing.*"  (emphasis added).  Such was the procedure that occurred here.  The

Trustee included a warning about the effect of non-action in the text of his objection,

providing that "[f]ailure to file a written reply will result in the Trustee requesting that the

Court enter an Order disallowing the claim to the extent objected to.  If you or your

attorney do not take these steps, the Court may decide that you do not oppose the

objection to your claim and may grant the Trustee's request."  Dkt. No. 132.

Despite the presence of the local rule as well as the Trustee's clear warning, ISTC

did not respond to the Trustee's objection, and Claim No. 5 was disallowed by the Court.

In many respects, this is akin to entry of a default judgment on Claim No. 5, and it is

well-settled that a default judgment is sufficient to satisfy the "actually litigated" prong of

the claim preclusion analysis.  *In re Garcia*, 313 B.R. at 311-12; *Cheirett v. Biggs (In re*

*Biggs)*, 563 B.R. 319 (Bankr. D. Idaho 2017).

Following entry of the order disallowing Claim No. 5, ISTC still sat on its rights.

Only months later did it seek reconsideration, but then settled the matter to its

satisfaction, and withdrew its motion to reconsider, and did so with prejudice.  While

Creditors and the Court were not involved in these discussions, ISTC filed and withdrew

documents and motions on the Court's docket, allowing entry of certain orders and

MEMORANDUM OF DECISION – 18

permitting others to stand in such a way that it "actually litigated" the matter by its own efforts and on its own terms.  Recall, the standard for issue preclusion requires that the matter be actually litigated by the party against whom preclusion is asserted.  Under these facts, ISTC cannot now contend that the issue was not actually litigated.

Finally, the Court must consider whether the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action.  At issue here is the allowance or disallowance of a claim in bankruptcy.  ISTC deliberately chose to permit Claim No. 5 to be disallowed after it secured a settlement with the Debtor that satisfied its claim.  Its withdrawal of the motion to reconsider the disallowance of the claim was a critical part of the treatment of its claim.

Accordingly, the Court concludes that issue preclusion applies to the Stipulation to Vacate the Reconsideration Motion, and as such, the order disallowing Claim No. 5 stands.

### b.  Merits of Reconsideration[8]

Even if the Court had concluded that preclusion did not apply to Claim No. 5 and had overruled Creditors' objection to the Stipulation to Vacate the Withdrawal of the prior Reconsideration Motion, the Court now concludes that resolution of the Reconsideration Motion on the merits would not aid ISTC.  As noted above, § 502(j)

_____

[8] The fact that ISTC voluntarily withdrew its motion for reconsideration with prejudice does not strictly preclude it from seeking reconsideration of the order disallowing Claim No. 5 under Civil Rule 60(b). *Merten v. City of Los Angeles,* 5 F.3d 538, 538 n.1 (9th Cir. 1993) (citing *Seidman v. City of Beverly Hills*, 785 F.2d 1447, 1448 n.3 (9th Cir. 1986)).

MEMORANDUM OF DECISION − 19

permits a bankruptcy court to reconsider a disallowed claim "for cause … according to the equities of the case." *See also* Rule 3008.  Together, Rule 3008 and § 502(j) essentially provide for a two-step analysis.  First the bankruptcy court must determine if cause exists to reconsider the claim, and second, the court may enter an appropriate order based on the equities of the case.  *Nations First Capital, LLC v. Decembre (In re Nations First Capital, LLC),* No. BAP EC-19-1201-GLB, 2020 WL 3071983, at *5 (9th Cir. BAP June 5, 2020).

When a request to reconsider a claim disallowance is made within the time to appeal the order, "cause" to reconsider is governed by Rule 9023.  *In re Wylie*, 349 B.R. 204, 209 (9th Cir. BAP 2006); *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 103 (9th Cir. BAP 2006), *aff'd*, 277 F. App'x 718 (9th Cir. 2008).  However, "when reconsideration is sought under FRCP 60(b) after the appeal period has expired, the party seeking reconsideration is not permitted to revisit the merits of the underlying judgment or argue that the trial court committed some legal error in arriving at that judgment." *In re Wylie,* 349 B.R. at 209.  Rather, that party is limited to the narrow grounds enumerated in Fed. R. Civ. P. 60(b).  *Id.*  The purpose of this distinction is to preserve the finality of the order allowing or disallowing a particular claim.  *Id.* at 210.  Under Civil Rule 60(b), successful motions for reconsideration "generally require a showing that events subsequent to the entry of the judgment make its enforcement unfair or inappropriate, or that the party was deprived of a fair opportunity to appear and be heard in connection with the underlying dispute." *Id.*  Civil Rule 60(b) contains several

MEMORANDUM OF DECISION − 20

categories of reasons for which a final judgment or order may be set aside.  In this case,

only subsections (1) and (6) appear to be arguably applicable.

### i. Civil Rule 60(b)(1)

Civil Rule 60(b)(1) provides that an order of the Court may be set aside for

"mistake, inadvertence, surprise, or excusable neglect."  However, "[n]either ignorance

nor carelessness on the part of the litigant or his attorney provide grounds for relief

under Rule 60(b)(1)."  *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir.

2006) (quoting *Engleson v. Burlington Northern R. Co.*, 972 F.2d 1038, 1043 (9th Cir.

1992)).  Moreover, in *Latshaw,* the Ninth Circuit extended its refusal to provide relief on

account of excusable neglect to attorney-based mistakes of law.  452 F.3d at 1101.  Given

this precedent, this Court can find no grounds for relief of the order disallowing Claim

No. 5 under Civil Rule 60(b)(1).  Here, ISTC exhibited both ignorance and carelessness.

The Code is confusing and ISTC ought to have preserved its rights by responding to

Debtor's initial objection to Claim No. 5.  Later, when it settled the matter, it ought to

have preserved its rights by not withdrawing its Reconsideration Motion with prejudice.

When ISTC's counsel noticed the error, she argued it was a mistake to include that

language in the Withdrawal, and admitted that it occurred due to a "copying" error,

because she essentially cut and pasted the language from another party's filing.  The

words "with prejudice" have meaning, and it was error not to carefully draft the

stipulation.  In sum, ISTC has not demonstrated that events subsequent to the entry of the

MEMORANDUM OF DECISION − 21

Withdrawal make its enforcement unfair or inappropriate, or that ISTC was deprived of a fair opportunity to appear and be heard in connection with it.

### ii.  Civil Rule 60(b)(6)

The Court will next consider Civil Rule 60(b)(6), which allows a trial court to set aside an order for "any other reason justifying relief from the operation of the [order]." Under this rule, relief from a judgment or order should be granted "sparingly as an equitable remedy to prevent manifest injustice," and "only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *In re Wylie*, 349 B.R. at 212 (quoting *United States v. Washington,* 394 F.3d 1152, 1157 (9th Cir. 2005) (quoting *United States v. Alpine Land & Reservoir Co.,* 984 F.2d 1047, 1049 (9th Cir. 1993))); *see also Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535, 125 S. Ct. 2641, 2649 (2005)).

Here, ISTC has not alleged, nor can the Court find, extraordinary circumstances which prevented it from taking timely action to either prevent or correct the entry of the Court's order disallowing Claim No. 5.  Rather, ISTC initially let Debtor's objection to Claim No. 5 stand without a fight, such that the Court entered an order disallowing the claim.  Only later, when ISTC presumably figured out the existence of the possibility of claiming additional priority tax debt in Debtor's bankruptcy case above and beyond what it claimed in Ms. Pottorff's case, did it seek reconsideration of the Court's order. However, ISTC then sought refuge in a settlement with the Debtor, and willingly vacated

MEMORANDUM OF DECISION − 22

the Reconsideration Motion with prejudice.  Only when Creditors stepped in and began to

assert their rights, did the deal fall apart and ISTC sought to unring the bell.

Based on the facts presented, the Court cannot conclude that extraordinary

circumstances prevented ISTC from taking measures to seek reconsideration of the

Court's order.  Rather, ISTC seemed adrift in a sea of changing stipulations and claim

amendments.  Such is not a proper basis for relief under Civil Rule 60(b)(6).

Accordingly, even if the Court had considered ISTC's Reconsideration Motion on the

merits, it would not have granted the relief sought under Civil Rule 60(b).

Following the Court's analysis of Claim No. 5, the picture looks like this:

| Tax Year | Priority/General | Amount | Claim No. | Status |
|----------|------------------|--------|-----------|--------|
| 2011 | Priority | $15,444 | 5 | Disallowed |
| 2012 | Priority | $16,498.00 | 5 | Disallowed |
| 2013 | Priority | $15,294.00 | 5 | Disallowed |
| 2014 | Priority | $14,650.00 | 5 | Disallowed |
| 2015 | Priority | $15,125.00 | 5 | Disallowed |
| 2016 | Priority | $14,861.00 | 5 | Disallowed |

B.  Claim No. 7

The Court now turns to the status of Claim No. 7.  Recall, ISTC filed this proof of

claim on June 11, 2018, lodging a claim for taxes, penalties, and interest for tax years

2007–2010.  Claims Reg. 7-1.  The Trustee filed an objection on February 15, 2019, to

which ISTC filed a timely response on March 15, 2019.  Dkt. Nos. 134; 140.  However,

that response was overlooked by both the Trustee and the Court, and the Trustee sought

an order disallowing the claim, and the Court entered one.  Dkt. Nos. 153; 154.  Also,

MEMORANDUM OF DECISION − 23

recall that in its Reconsideration Motion, filed about six weeks after the Court entered its

order disallowing Claim No. 7, ISTC sought reconsideration and amendment of Claim

No. 5.  However, as alternative relief, ISTC sought vacation of the order disallowing

Claim No. 7, and reconsideration of that claim.  As discussed above, that motion for

reconsideration was withdrawn with prejudice, but ISTC and Debtor stipulated to put it

back before the Court for consideration, spurring Creditor's objection.

Claim No. 7 is different than the others, in that it is simply a copy of the Notice of

Deficiency Determination sent to Debtor and Ms. Pottorff.  It does not describe the Code

section that provides the basis for the claim, nor whether it is intended to be a priority or

general claim.  However, in its response to Trustee's objection to Claim No. 7, ISTC

argues that the claim seeks "priority tax debt for years 2007 through 2010."  Dkt. No.

140.  As such, the Court will consider this to be a claim for priority debt.

The Court has concluded above that the Reconsideration Motion ought not to be

revived on the basis of preclusion.  The alternative grounds for relief involving Claim No.

7 would likely be swept into that ruling.  However, Civil Rule 60(a), made applicable in

bankruptcy proceedings under Rule 9024, provides that the Court "may correct a …

mistake arising from oversight … whenever one is found in a judgment, order, or other

part of the record."  Given that the Court entered the order disallowing Claim No. 7

exclusively on the basis that no response had been filed, when in fact ISTC had lodged a

timely response to the objection, it is proper for the Court to vacate its own order

disallowing Claim No. 7.  As a result, the Court now finds itself in the position that it was

MEMORANDUM OF DECISION − 24

in on March 15, 2019, at which point Trustee had filed an objection to Claim No. 7, and

ISTC had responded.  Thus, belatedly, the Court will consider the merits of Claim No. 7.

The Trustee's objection to this claim is succinct: "Claim [No. 7] is a duplication of

Claim #5 filed by the actual Idaho State Tax Commission.  Claim #7 should not be

allowed for distribution."  Dkt. No. 134.  ISTC's response is nearly as brief: "The claims

are not duplicates.  Claim No. 5 is priority tax debt for years 2011 through 2016, and

Claim No. 7 is priority tax debt for years 2007 through 2010.  The tax liabilities for both

claims are from married, filing joint tax periods, for which the Debtor is individually

liable."  Dkt. No. 140.  As discussed above, the Court views the priority tax debts for

individual tax years as distinct claims, and thus a claim for priority tax debt for a certain

year is not duplicative of a priority claim for a different year.  Accordingly, Trustee's

objection to Claim No. 7 is now overruled, and that claim is allowed.  The status of

ISTC's claims now look like this:

| Tax Year | Priority/General | Amount | Claim No. | Status |
|----------|------------------|--------|-----------|--------|
| 2007 | Priority | $5,780.00 | 7 | Allowed |
| 2008 | Priority | $24,701 | 7 | Allowed |
| 2009 | Priority | $32,798 | 7 | Allowed |
| 2010 | Priority | $41,291 | 7 | Allowed |
| 2011 | Priority | $15,444 | 5 | Disallowed |
| 2012 | Priority | $16,498.00 | 5 | Disallowed |
| 2013 | Priority | $15,294.00 | 5 | Disallowed |
| 2014 | Priority | $14,650.00 | 5 | Disallowed |
| 2015 | Priority | $15,125.00 | 5 | Disallowed |
| 2016 | Priority | $14,861.00 | 5 | Disallowed |

MEMORANDUM OF DECISION − 25

C. Claim No. 8

The Court will next consider the status of Claim No. 8, by which ISTC seeks a priority claim under § 507(a)(8)(A)(iii) in the amount of $109,357.09, comprising unpaid taxes for the 2008–2013 tax years, in light of Creditors' objections thereto. The claim, as amended, reflects the amounts paid to ISTC through distributions in Ms. Pottorff's bankruptcy case, as well as a payment made by Debtor pursuant to the Settlement Agreement. Claims Reg. 8-2, 8-3; Ex. A. It also includes a general claim for taxes, interest, and penalties due for 2008–2016 in the amount of $86,948. Claims Reg. 8-3.

Initially, Debtor had objected to Claim No. 8 on several grounds, but withdrew the objection following execution of the Settlement Agreement. Dkt. Nos. 168; 213. Following each of the two amendments to the claim, however, Creditors lodged objections. Dkt. Nos. 215; 232. Creditor's objection to Claim No. 8 is based on three separate grounds: first, the disallowance of Claim No. 5 disqualifies Claim No. 8 on the basis of claim preclusion; second, the mutual release included in the Settlement Agreement between ISTC and Debtor bars the filing of Claim No. 8; and finally, that Claim No. 8 was untimely. The Court will discuss each of these in turn.

1. *Claim Preclusion, Part II*

Creditor's first objection is easily resolved. Based upon the lengthy discussion above, claim preclusion attaches to the tax debts claimed in Claim No. 5, and ISTC is precluded from reasserting those same tax debts under the guise of a different claim number. Recall, Claim No. 5 sought priority treatment of tax liability for tax years 2011–

MEMORANDUM OF DECISION − 26

2016.  Accordingly, the portion of Claim No. 8 which asserts a priority claim for tax years 2011–2013 is subject to claim preclusion, therefore Creditor's objection to Claim No. 8 will be granted, and those claims will be disallowed.[9]

Finally, the Court will consider the remaining tax debt asserted in Claim No. 8, constituting the priority claims for tax years 2008–2010.  As noted above, those claims have not been previously adjudicated by the Court, therefore, because there is no identity of claims, preclusion does not apply and Creditor's objection to the claim will not be granted on that basis.  However, the Court believes that at least some portion of the tax debt asserted by ISTC in Claim No. 8 for tax years 2008–2010 may be duplicative of that sought in Claim No. 7.  The Court is unable to quantify that amount, and directs ISTC to amend both Claim No. 7 and Claim No. 8, as necessary, in order to ensure that no duplication is present.

Because the application of claim preclusion does not bar all of ISTC's claims included in Claim No. 8, the Court will next take up Creditor's remaining objections to that claim.

---

[9] For 2011 and 2012, the amount of tax claimed is the same in both Claim Nos. 5 and 8.  However, in Claim No. 8, ISTC has also sought interest in addition to the tax, but ISTC has not argued that it may still pursue a priority claim for interest on that disallowed debt.  As to the debt for tax year 2013, the amount of the priority claim disallowed by Claim No. 5 is larger than the priority debt claimed in Claim No. 8, and thus the priority debt for 2013 on Claim No. 8 will be disallowed.

MEMORANDUM OF DECISION − 27

*2. The Mutual Release*

Initially, the Court will consider ISTC's argument that Fed. R. Evid. 408 prohibits

Creditors' use of the Settlement Agreement in this instance. That rule provides, in

relevant part:

> **Rule 408. Compromise Offers and Negotiations**
>  **(a) Prohibited Uses.** Evidence of the following is not admissible--on
> behalf of any party--either to prove or disprove the validity or amount of a
> disputed claim or to impeach by a prior inconsistent statement or a
> contradiction:
>> **(1)** furnishing, promising, or offering--or accepting, promising to
>> accept, or offering to accept--a valuable consideration in
>> compromising or attempting to compromise the claim; and
>> **(2)** conduct or a statement made during compromise negotiations
>> about the claim--except when offered in a criminal case and when
>> the negotiations related to a claim by a public office in the exercise
>> of its regulatory, investigative, or enforcement authority.
> **(b) Exceptions.** The court may admit this evidence for another purpose,
> such as proving a witness's bias or prejudice, negating a contention of
> undue delay, or proving an effort to obstruct a criminal investigation or
> prosecution.

The Court concludes ISTC is correct. Subsection (a) clearly prohibits the use of

the Settlement Agreement to prove or disprove the validity or amount of a disputed

claim. Here, Creditors seek to use the text of the Settlement Agreement as proof that

ISTC's claims for tax liability against Debtor in his bankruptcy case are invalid, because

they have contracted them away. Such directly violates Fed. R. Evid. 408(a). *See also In

re Bondurant*, 180 B.R. 654, 655 (Bankr. N.D. Ala. 1995) ("neither an offer to

compromise, acceptance of such offer, *nor an actual completed compromise of a disputed*

MEMORANDUM OF DECISION − 28

*claim* is admissible to prove liability or invalidity of the claim or amount.") (quoting

Russell, *Bankruptcy Evidence Manual,* § 408.1 (emphasis added)).

Moreover, even if the rules of evidence did not preclude the Court's consideration

of the Settlement Agreement, Creditors' use of that document is nevertheless prohibited

on other grounds.  The Settlement Agreement entered into between ISTC and Debtor

provides, in relevant part:

> 3.      In exchange for the Settlement Payment, [ISTC] agrees to withdraw
> its Motion to Reconsider (Bankruptcy Docket No. 158) by filing a
> Withdrawal with the Court and further stipulates and agrees that the
> Agreement shall be final and conclusive as to any income tax liability owed
> by Pottorff for taxable years from the beginning of time up to, through and
> including 2016 resulting from or in any way relating to Charlotte's
> Embezzlement of funds from [Creditors]…."
>
> 5.      Upon execution of this Agreement and in consideration of the
> promises contained herein, the Parties do hereby release, remise, and
> forever discharge each other, their attorneys, accountants, and any other
> agents of either party from any and all claims, demands, rights, or causes or
> [sic] action of whatsoever kind or nature which any party hereto has ever
> had or may now have, whether known or unknown that have arisen or may
> arise relating to the Parties' dispute involving tax, interest, and penalties
> claimed to be owed by Pottorff due to the Unreported Stolen Income from
> the beginning of time up to, through and including 2016, and/or any matters
> arising from or assertable [sic] in connection with the Unreported Stolen
> Income from the beginning of time up to, through and including 2016
> which arose prior to the date of execution of this Agreement (the "Released
> Matters"), and the parties agree that no suit, action, or proceeding for
> determination, assessment, collection, refund, or credit be brought by either
> party as to the Released Matters.

Ex. A at ¶¶ 3; 5.

In addition, the second paragraph of the settlement agreement provides that ISTC

"shall have the reserved right to pursue and obtain recovery on its Proofs of Claim as is

MEMORANDUM OF DECISION − 29

allowed, without objection from [Debtor]." Ex. A at ¶ 2. Creditors focus on the phrase

"as is allowed," contending that due to the mutual release, any claim by ISTC against

Debtor is unenforceable, and thus is not an allowed claim under § 502(b)(1), which

provides that claims are allowable except to the extent that the claim is unenforceable

against the debtor.

     Although not raised by ISTC, the Court is concerned about Creditor's use of the

terms of the mutual release as a sword when they are not parties to the Settlement

Agreement. It does not appear to the Court, nor does any party allege, that the Settlement

Agreement was executed with Creditors in mind. Generally, contract law provides that

incidental beneficiaries of a contract have no rights of enforcement. *Klamath Water

Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion

amended on denial of reh'g,* 203 F.3d 1175 (9th Cir. 2000). In reaching its decision, the

panel in *Klamath* cited to the Restatement of Contracts:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary
> of a promise is an intended beneficiary if recognition of a right to
> performance in the beneficiary is appropriate to effectuate the intention of
> the parties and ... (b) the circumstances indicate that the promisee intends to
> give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended
> beneficiary.

*Id.* (quoting Restatement (Second) of Contracts § 302 (1979)). The *Klamath* decision

continued:

> To sue as a third-party beneficiary of a contract, the third party must show
> that the contract reflects the express or implied intention of the parties to

MEMORANDUM OF DECISION − 30

the contract to benefit the third party.  The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract.  One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her.

*Klamath,* 204 F.3d at 1211 (internal citations omitted); *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012).

A close examination of the language of the release in ¶ 5 indicates the parties to the Settlement Agreement, Debtor and ISTC, specifically released "each other," and agreed that no suit could be brought "by either party" on the relevant matters.  Ex. A. From the plain language of the document, the Court cannot conclude that Creditors were even considered, let alone intended, to be third party beneficiaries to the Settlement Agreement, and as such, they have no rights of enforcement.  *Klamath,* 204 F.3d at 1211 n.2 ("A promisor owes a duty of performance to any intended beneficiary of the promise, and 'the intended beneficiary may enforce the duty,' whereas an incidental beneficiary acquires 'no right against the promisor or the promisee.'") (quoting Restatement (Second) of Contracts §§ 302, 315.))

Moreover, in *Klamath*, the contract at issue contained a paragraph providing that the contract "binds and inures to the benefit of the parties hereto, their successors and assigns…."  204 F.3d at 1212.  The panel held that the provision "clearly evinces the intent of the parties to limit intended beneficiaries to the contracting parties."  *Id.*  The

MEMORANDUM OF DECISION − 31

Settlement Agreement at issue contains a strikingly similar provision: "This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and each and all of their heirs, personal representatives, successors, and assigns." Ex. A at ¶ 12.  Nothing in the Settlement Agreement suggests that Creditors were intended beneficiaries.  Indeed, Creditors had to subpoena ISTC and Debtor in order to obtain a copy of the Settlement Agreement in the first instance.  Dkt. No. 220.

Accordingly, as incidental beneficiaries of the Settlement Agreement, Creditors cannot seek to enforce its terms for their own advantage and prohibit ISTC from submitting Claim No. 8, or any proof of claim, in Debtor's bankruptcy case.  Therefore, the Settlement Agreement does not provide a proper basis for Creditors to object.

3. *Timeliness of Claim No. 8*

Finally, Creditors contend that Claim No. 8 was untimely.  As noted above, governmental units are given 180 days in which to file their proofs of claim, and Claim No. 5 was timely filed.  On the other hand, Claim Nos. 7 and 8 were filed after the government's deadline, and therefore are untimely.  However, although not styled as an amendment to Claim No. 5, and ISTC has not raised this argument, a late-filed claim can relate back to a timely-filed claim.  The Ninth Circuit has held that, "[i]n the absence of prejudice to an opposing party, the bankruptcy courts, as courts of equity, should freely allow amendments to proofs of claim that relate back to the filing date of the informal claim when the purpose is to cure a defect in the claim as filed or to describe

MEMORANDUM OF DECISION – 32

the claim with greater particularity." *In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 816–17 (9th Cir. 1985).

The Ninth Circuit observed, in a case involving formal proofs of claim such as those presented here, that there is "a long established liberal policy that permits amendments to a proof of claim.  The crucial inquiry is whether the opposing party would be unduly prejudiced by the amendment." *In re Roberts Farms, Inc.,* 980 F.2d 1248, 1251–52 (9th Cir. 1992).  In order to determine whether a party is prejudiced by the amendment, the Court must consider "such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position." *Wall St. Plaza, LLC v. JSJF Corp.* 344 B.R. at 101–02.

Here, ISTC's filing of Claim No. 8 was merely a reassertion of its prior claims, and was, at bottom, an attempt by ISTC to finally settle on a claim amount for the unreported income stemming from Ms. Pottorff's embezzlement from Creditors.  While ISTC certainly has changed its position a number of times during the course of this bankruptcy case, it has consistently maintained a right to payment from Debtor for taxes owed on the unreported embezzlement income.  Recall the series of filings in this case:

- April 18, 2018:  ISTC filed Claim No. 5.  Claims Reg. 5-1.

- June 11, 2018:  ISTC filed Claim No. 7.  Claims Reg. 7-1.

- July 9, 2019: ISTC sought reconsideration of Claim No. 5, along with the right to amend that claim; in the alternative, ISTC sought reconsideration of Claim No. 7. Dkt. No. 158.

MEMORANDUM OF DECISION − 33

- July 23, 2019: ISTC filed Claim No. 8 in which it asserted claims based on the same underlying debt. Claims Reg. 8-1.

- October 17, 2019: After settling with Debtor, ISTC moved to withdraw the reconsideration with prejudice. Dkt. 212.

- December 4, 2019: Following Creditors' objection to Claim No. 8, Dkt. No. 215, ISTC feverishly began to clean up the docket in order to preserve its claim. This included:

  o Filing the notice of errata in the motion to reconsider, by which it sought to clarify that the withdrawal of the motion to reconsider was only filed with prejudice as to the Debtor and not to third parties. Dkt. No. 216.

  o Filing a stipulation with Debtor to set aside the withdrawal. Dkt. No. 217.

  o Filing a response to Creditors' objection to Claim No. 8. Dkt. No. 218.

In short, there can be no sincere argument that ISTC engaged in bad faith or unreasonable delay in filing Claim No. 8, nor in clarifying its position on that claim. Moreover, under the facts presented here, there is no basis for Creditors to claim any reliance on ISTC's intention to *not* pursue a claim against Debtor—quite the opposite. As the BAP noted in *Wall St. Plaza, LLC v. JSJF Corp.,* "prejudice requires more than simply having to litigate the merits of, or to pay, a claim—there must be some legal detriment to the party opposing." 344 B.R. at 102. While Creditors will have to take a position behind ISTC as a priority creditor in Debtor's bankruptcy case, it cannot be said that they are "unduly prejudiced" such that the Court should overlook the liberal policy in favor of amendments to proofs of claim. This is especially true when the amendment only seeks a claim for debts the Code permits.

MEMORANDUM OF DECISION − 34

To summarize, the disallowance of Claim No. 5 precludes some of the claims asserted by ISTC in Claim No. 8.  In addition, the allowance of Claim No. 7 may be duplicative of a portion of the debt claimed in Claim No. 8.  Moreover, the Court concludes that use of the Settlement Agreement as proof of the claim amount is barred by Fed. R. Evid. 408, and even absent such a prohibition, the mutual release contained in the Settlement Agreement does not provide a basis for Creditors to object to Claim No. 8.  Finally, though untimely, the Court considers Claim No. 8 as a permissive amendment to Claim No. 5, which was timely filed.  Accordingly, the following table represents the current state of ISTC's claims in this case:

| Tax Year | Priority/General | Amount | Claim No. | Status |
|----------|------------------|--------|-----------|--------|
| 2007 | Priority | $5,780.00 | 7 | Allowed |
| 2008 | Priority | $24,701 | 7 | Allowed*[10] |
| 2008 | Priority | $7,958.95 | 8-3 | Allowed* |
| 2008 | General | $7,669.00 | 8-3 | Allowed |
| 2009 | Priority | $32,798 | 7 | Allowed** |
| 2009 | Priority | $22,504.73 | 8-3 | Allowed** |
| 2009 | General | $10,452.00 | 8-3 | Allowed |
| 2010 | Priority | $41,291 | 7 | Allowed*** |
| 2010 | Priority | 28,004.15 | 8-3 | Allowed*** |
| 2010 | General | 13,499.00 | 8-3 | Allowed |
| 2011 | Priority | $15,444 | 5 | Disallowed |
| 2011 | Priority | 18,604.79 | 8-3 | Disallowed |
| 2011 | General | $9,266.00 | 8-3 | Allowed |
| 2012 | Priority | $16,498.00 | 5 | Disallowed |
| 2012 | Priority | $19,262.89 | 8-3 | Disallowed |
| 2012 | General | $9,899.00 | 8-3 | Allowed |
| 2013 | Priority | $15,294.00 | 5 | Disallowed |
| 2013 | Priority | $13,021.58 | 8-3 | Disallowed |

---

[10] The symbols *, **, and *** designate potentially duplicate claims.

MEMORANDUM OF DECISION − 35

| 2013 | General | $9,381.00 | 8-3 | Allowed |
| 2014 | Priority | $14,650.00 | 5 | Disallowed |
| 2014 | General | $8,790.00 | 8-3 | Allowed |
| 2015 | Priority | $15,125.00 | 5 | Disallowed |
| 2015 | General | $9,075.00 | 8-3 | Allowed |
| 2016 | Priority | $14,861.00 | 5 | Disallowed |
| 2016 | General | $8,917.00 | 8-3 | Allowed |

D.  Judicial Estoppel

Finally, after digging deep into their bag of legal theories, Creditors argue that the

doctrine of judicial estoppel applies to ISTC because it has taken differing and

inconsistent positions about its claims and their various amendments in Debtor's case, as

well as Ms. Pottorff's.

Judicial estoppel was summarized by the Ninth Circuit as follows:

> "Judicial estoppel is an equitable doctrine invoked by a court at its
> discretion."  "[I]ts purpose is to protect the integrity of the judicial process
> by prohibiting parties from deliberately changing positions according to the
> exigencies of the moment."
>
> Although judicial estoppel is "probably not reducible to any general
> formulation of principle,... several factors typically inform the decision
> whether to apply the doctrine in a particular case."  "First, a party's later
> position must be 'clearly inconsistent' with its earlier position."  "Second,
> courts regularly inquire whether the party has succeeded in persuading a
> court to accept that party's earlier position, so that judicial acceptance of an
> inconsistent position in a later proceeding would create the perception that
> either the first or the second court was misled."  "A third consideration is
> whether the party seeking to assert an inconsistent position would derive an
> unfair advantage or impose an unfair detriment on the opposing party if not
> estopped."  "In enumerating these factors, we do not establish inflexible
> prerequisites or an exhaustive formula for determining the applicability
> of judicial estoppel. Additional considerations may inform the doctrine's
> application in specific factual contexts."

MEMORANDUM OF DECISION − 36

*Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270–71 (9th Cir. 2013) (internal

citations omitted); *Hamilton v. State Farm*, 270 F.3d 778, 782 (9th Cir. 2001).  In

applying this doctrine, "it may be appropriate to resist application of judicial estoppel

when a party's prior position was based on inadvertence or mistake." *New Hampshire v.*

*Maine,* 532 U.S. 742, 753, 121 S. Ct. 1808, 1816 (2001) (internal quotation marks

omitted).  In doing so, the Ninth Circuit instructs this Court to employ the "ordinary

interpretation" of the terms "mistake" and "inadvertence."  *Ah Quin*, 733 F.3d at 277.

Finally, the doctrine of judicial estoppel is concerned with the integrity of the courts*,* not

the effect on parties*.  Ah Quin*, 733 F.3d at 275 (citing *Ryan Operations G.P. v. Santiam-*

*Midwest Lumber Co.,* 81 F.3d 355, 360 (3d Cir. 1996) ("Judicial estoppel is intended to

protect the courts rather than the litigants." (internal quotation marks omitted))).

Applying those standards here, the Court concludes that the elements of judicial

estoppel have not been met.  While ISTC has filed multiple proofs of claim and many

amendments to those claims, it has consistently asserted that it is owed a debt for taxes on

the unreported embezzlement income.  Neither the Court nor Creditors can argue ISTC

has taken inconsistent positions about that.  The only movement in ISTC's position was

about amounts, priorities, and settlement of the claim.  Some of those changes stemmed

from payments made through Ms. Pottorff's estate and direct payments by Debtor, and

some arose as counsel for ISTC came to understand the mechanics of the Code better.  As

noted above, judicial estoppel may be inappropriate when the prior position is based on

inadvertence or mistake.  The Court finds the first factor is not met.

MEMORANDUM OF DECISION – 37

Regarding the second factor, ISTC never persuaded the Court to accept its prior positions. While it filed a number of documents on the Court's docket, this is essentially the first the Court will be actively involved with since disallowing Claim No. 5 on March 22, 2019, and thus there should be no perception that this Court has in any way been misled. While Creditors may have been misled regarding ISTC's position concerning its tax claims, that is not the focus of the doctrine of judicial estoppel.

Finally, while ISTC's assertion of its priority claims in this case will certainly impact Creditors, as noted above, these latter claims are not "inconsistent" with ISTC's early claims, and does not give it an unfair advantage or impose an unfair detriment on Creditors absent the imposition of judicial estoppel. Rather, in a roundabout and convoluted manner, ISTC is ultimately only asserting a claim for what the Code permits. Accordingly, judicial estoppel is not applicable under the facts presented here.

### *Conclusion*

To summarize, the Court's holdings in this decision:

1.      Issue preclusion only prevents ISTC from asserting a priority claim in Debtor's bankruptcy case for tax years 2014–2016. There is no issue preclusion as to the other tax years based on claims made in Ms. Pottorff's case.

2.      As to Claim No. 5, the doctrines of claim preclusion and issue preclusion apply such that the Court's order disallowing Claim No. 5 and the Stipulation to Vacate the Withdrawal of ISTC's Reconsideration Motion, with prejudice, are entitled to

MEMORANDUM OF DECISION − 38

preclusive effect.  Additionally, even if the Court were to reconsider its order disallowing Claim No. 5, the requirements for reconsideration have not been met.

3.      Regarding Claim No. 7, the Court's prior order disallowing that claim is vacated under Civil Rule 60(a), and the Trustee's objection to that claim is overruled.

4.      As to Claim No. 8, the Court's disallowance of Claim No. 5 precludes ISTC from asserting the same claim in Claim No. 8, specifically priority tax debt for tax years 2011–2013.  The mutual release in the Settlement Agreement does not bar ISTC's assertion of Claim No. 8, and the Court concludes this claim is timely as an amendment to Claim No. 5.  However, there may be duplication between Claim No. 7 and Claim No. 8 for tax years 2008–2010, and ISTC is directed to amend one or both claims to eliminate any duplication.

5.      The doctrine of judicial estoppel is not applicable here.

Based upon the foregoing, Creditor's objection to the stipulation to vacate the prior withdrawal of ISTC's motion for reconsideration is granted as to Claim No. 5 and denied as to Claim No. 7.  Furthermore, Creditor's objection to ISTC's second amended Claim No. 8 is granted in part and denied in part.

A separate order will be entered.

DATED:  July 10, 2020

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION – 39